SHEET METAL WORKERS INTERNA-
TIONAL ASSOCIATION, LOCAL
UNION NO. 150, Plaintiff–Appellant,

v.

AIR SYSTEMS ENGINEERING, INC.,
Defendant–Appellee.

No. 89–35039.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 1990.

Decided Oct. 3, 1990.

Marion G.M. Leach, F.G. Enslow & Associates, Tacoma, Wash., for plaintiff-appellant.

Judd H. Lees, Williams, Kastner & Gibbs, Bellevue, Wash., for defendant-appellee.

Before WRIGHT, POOLE and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Sheet Metal Workers International, Local Union 150, filed an action in the district court to enforce an arbitration award under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 141 et seq. The award was made pursuant to an interest arbitration clause in the collective bargaining agreement between the Union and Air Systems Engineering, the appellee-employer. The district court ruled that the interest arbitration clause was not in effect at the time the Union submitted the matter to arbitration and, therefore, the court lacked subject matter jurisdiction under Section 301. We affirm.

STANDARD OF REVIEW

The existence of subject matter jurisdiction is a question of law reviewed de novo. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). "[T]he district court's factual findings on jurisdictional issues

must be accepted unless clearly erroneous." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation,* 873 F.2d 1221, 1225 (9th Cir.1989).

*FACTS AND PROCEEDINGS BELOW*

Sheet Metal Workers Local 150 (the "Union") entered into a collective bargaining agreement with Air Systems Engineering on June 1, 1977. The contract contained the following duration (article XII) and interest arbitration (article X) provisions which gave rise to the dispute in this case:

### ARTICLE X

SECTION 8. In addition to the settlement of grievances arising out of interpretation or enforcement of this agreement as set forth in the preceding sections of this Article, any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this agreement shall be settled as hereinafter provided:

(a) Should the negotiations for renewal of this agreement become deadlocked, ... [and if an] attempt to conciliate the differences between the parties and bring about a mutually acceptable agreement [fails], ... [then] [T]he dispute shall be submitted to the National Joint Adjustment Board [for binding arbitration].

.    .    .    .    .

### ARTICLE XII

SECTION 1. This Agreement ... shall become effective on the 1st day of June, 1980, and remain in full force and effect until the 31st day of May, 1983, and shall continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date. In the event such notice of reopening is served, this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party, except as modified by Section 8 of Article X.

On February 28, 1983, Tom Moody, the business manager for the Union, sent an untimely notice of reopening to Air Systems. Air Systems received the notice on March 8. On March 29, in response to the Union's untimely notice to reopen negotiations, Air Systems informed the Union that it would terminate the current collective bargaining agreement on May 31, 1983. The letter also invited the Union to enter into negotiations for a new agreement.

Over the next year, the parties negotiated for a contract. Air Systems characterizes these meetings as negotiations for a new agreement; the Union urges that they were negotiating a renewal of the existing contract.

In March of 1984, Air Systems tendered its last and final offer which the Union refused to accept. On March 21, the Union informed Air Systems that because an impasse in negotiations had been reached, it was requesting resolution of the matter through arbitration pursuant to article X, section 8 of the contract. Air Systems responded on April 11, reiterating its position that the contract had been terminated and stating that the arbitration clause was unenforceable.

In May the Union requested joint submittal to arbitration by the National Joint Adjustment Board. Air Systems refused to submit the dispute to arbitration. The NJAB met to hear the case on June 19, and Air Systems did not attend. On June 20, the NJAB issued its decision, stating the parties were to be bound for two years to an agreement with the same terms as the original contract.

Air Systems refused to abide by the arbitration award, contending the arbitrator had no jurisdiction. The Union filed this action in federal district court to enforce the arbitration award under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). The district court, after a bench trial, dismissed the case for lack of subject matter jurisdiction.[1] The Union ap-

---

**1.** Air Systems never moved to vacate the award. The Union argues that Air Systems thus waived all defenses, including subject matter jurisdic-

tion. However, subject matter jurisdiction cannot be waived. *Augustine v. United States,* 704

peals the dismissal and requests attorney's fees.

*DISCUSSION*

■ Section 301 of the Labor Management Relations Act grants a district court jurisdiction to enforce an arbitration award entered into pursuant to a collective bargaining agreement. 29 U.S.C. § 185(a). As part of an enforcement action under § 301, the court must determine whether the parties to the arbitration award consented by contract or by conduct to be bound by the arbitration. *See George Day Constr. Co. v. United Bhd. of Carpenters, Local 354,* 722 F.2d 1471, 1474–75 (9th Cir. 1984).

The collective bargaining agreement between the Union and Air Systems contained an arbitration clause. The collective bargaining agreement was to remain in effect until May 31, 1983 and continue in effect from year to year thereafter unless either side gave written notice to reopen the agreement at least ninety days before the automatic renewal date pursuant to article XII of the contract. If timely notice to reopen was given, the agreement would continue in effect until negotiations were complete or were terminated by either party except as modified by article X, § 8, the interest arbitration clause. Section 8 establishes an arbitration procedure for resolving "any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this agreement." If negotiations reach an impasse, the dispute would be submitted to the National Joint Adjustment Board ("NJAB"). The NJAB's decision is final and binding upon the parties.

■ The question of arbitrability is an issue for judicial determination. *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986); *Associated Plumbing & Mechanical Contractors v. Local Union No. 447, Utd. Ass'n of Journeymen,* 811 F.2d 480, 481 (9th Cir.1987). While there is a strong presumption of arbitrability, *AT & T,* 475 U.S. at 650, 106

S.Ct. at 1419, this presumption must be balanced with the principle that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *AT & T,* 475 U.S. at 648, 106 S.Ct. at 1418 (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)). Air Systems argues it did not agree to submit this dispute to arbitration because, at the time the Union sent the matter to arbitration, the arbitration clause of the contract was not in effect.

We have previously dealt with contract language very similar to that involved in this case. *See Hotel & Restaurant Employees and Bartenders Union, Local 703, v. Williams,* 752 F.2d 1476, 1479 (9th Cir. 1985) (interest arbitration clause survives contract expiration); *American Metal Products, Inc. v. Sheet Metal Workers Int'l Ass'n, Local 104,* 794 F.2d 1452, 1455 (9th Cir.1986) (interest arbitration clause survives notice of termination or termination itself); *Int'l Bhd. of Electrical Workers, Local 367 v. Graham County Electric Coop., Inc.,* 783 F.2d 897, 900 (9th Cir.1986) (arbitration clause continues past termination of contract). In *Williams,* we held that the interest arbitration clause at issue survives termination of the contract and binds the parties to arbitrate their differences where the demand for arbitration was timely. *Williams,* 752 F.2d at 1479. However, we have not previously addressed whether the interest arbitration clause binds the parties to arbitrate where an untimely notice of reopen is served.

The interest arbitration clause in article X states that "any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this agreement" shall be subject to arbitration. Any failure to negotiate a renewal of the contract would necessarily occur after negotiations to renew had begun. Thus, in order for article X's arbitration provisions to apply, the parties must be involved in negotiating a renewal of the agreement. Under article

F.2d 1074, 1077 (9th Cir.1983). Therefore, this

issue was properly before the district court.

XII, the parties can negotiate a renewal only if either party gives the other notice of its intent to reopen negotiations on the contract ninety days before the renewal date (here May 31, 1983). Thus, the interest arbitration clause cannot become effective until the parties have validly begun negotiations for a renewal of the contract, which is done by giving ninety-day notice.

The district court found that the Union failed to give timely ninety-day notice of its intent to reopen negotiations, a conclusion the Union does not contest. Therefore, the interest arbitration provision of article X never came into effect, and Air Systems was not bound by the subsequent arbitration.

The Union argues, however, that both parties were engaged in valid negotiations to renew the contract because Air Systems waived the ninety-day notice requirement by entering into contract talks with the Union after the untimely notice was given. Air Systems did not waive the ninety-day notice requirement. In its letter of March 29, 1983, Air Systems told the Union to contact it if the Union wanted "to enter into negotiation for a new agreement." Further, at their first meeting after the Union's untimely notice was given, Air Systems clearly stated its intention to negotiate a new contract, not a renewal of the previous contract. Air Systems did not waive the notice requirement; to the contrary, it elected to cancel the contract based on the Union's failure to give timely notice.

Therefore, Air Systems and the Union were not engaged in valid negotiations to renew the contract, and, as a result, the interest arbitration provision of article X,

§ 8 was never properly invoked.[2] The arbitration was conducted without Air Systems' consent and, as a result, was not binding. *See George Day Constr.*, 722 F.2d at 1474 (enforceable arbitration award requires the consent of both parties). The district court correctly concluded it had no jurisdiction to hear this case.[3]

AFFIRMED.

---

2. Both parties raise various issues relating to the enforceability of the award, i.e., whether the Union followed the proper procedures in submitting the dispute to arbitration and whether Air Systems' failure to vacate the arbitration award bars it from raising this issue. Because we have no jurisdiction to hear the case, we do not address these issues.

3. The Union requests attorney's fees in this case. The district court did not rule on the Union's request. The Union requests attorney's fees based on the ground that Air Systems' refusal to

arbitrate and abide by the arbitration award is without justification. Because we rule in favor of Air Systems, we find its position justified. Therefore, the Union's request for fees is denied. *See International Union of Petroleum & Indus. Workers v. Western Indus. Maintenance, Inc.*, 707 F.2d 425, 428 (9th Cir.1983) (employer's *unjustified* refusal to abide by an arbitrator's award will support a fee award).