929 F.2d 260
 Bankr. L. Rep. P 73,877, 13 Employee Benefits Ca 1940
CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS PENSION FUND,
Howard McDougall, Representative Trustee,
Plaintiffs-Appellees,
Board of Trustees, Michigan United Food and Commercial
Workers Union and Food Employers Joint Pension
Fund, Intervenor Plaintiff-Appellee,
v.
CHATHAM PROPERTIES, a Michigan Corporation, Royal
Distributing Company, a Michigan Corporation, Leeds
Properties, a Michigan Corporation, Blue and White Express
of Michigan, Inc., a Michigan Corporation, Market
Properties, Inc., a Michigan Corporation, Markets Unlimited,
Inc., a Michigan Corporation, Defendants-Appellants.
Regal Insurance Company, Defendant.
 No. 89-1451.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 15, 1991.
Decided April 3, 1991.
 
 Russell N. Luplow, Elizabeth Roberto, Bloomfield Hills, Mich., Thomas J. Angell, Central States, Southeast & Southwest Areas Health & Welfare & Pension Funds, Terence G. Craig (argued), Central States Law Dept., Rosemont, Ill., for plaintiffs-appellees.
 Theodore Sachs, Irvin Mark Steckloff, Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, Detroit, Mich., Thomas J. Angell, Rosemont, Ill., for intervenor-plaintiff-appellee.
 Dennis S. Kayes, Kay A. Standridge, Pepper, Hamilton & Scheetz, Detroit, Mich., John J. Bobrowski (argued), Dykema, Gossett, Spencer, Goodnow & Trigg, Bloomfield Hills, Mich., for defendants-appellants.
 Before KEITH and NELSON, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 BAILEY BROWN, Senior Circuit Judge.
 
 
 1
 The defendants-appellants, Chatham Properties, Royal Distributing Co., Leeds Properties, Blue and White Express of Michigan, Inc., Market Properties, Inc., and Markets Unlimited, Inc., all subsidiaries of the bankrupt Nu-Trax, Inc., appeal the district court's grant of summary judgment in favor of the plaintiffs-appellees, two multiemployer pension funds. Because of the bankruptcy of their parent corporation, the appellants claim that they should not be held jointly and severally liable for interim withdrawal payments as a result of their and the parent's withdrawal from the multiemployer pension funds governed by Title IV of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Secs. 1001 et seq. as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. Secs. 1381-1461. For the reasons that follow, we AFFIRM the district court's grant of summary judgment in favor of the appellees, the pension funds.
 
 
 2
 * Central States Pension Fund is a multiemployer benefit plan under section 4001(a)(3) of ERISA, 29 U.S.C. Sec. 1301(a)(3). Central States provides retirement benefits to plan participants who are mostly members of the Teamsters Union in the South and Mid-West. Likewise, the Michigan United Food and Commercial Workers Union and Food Employers Joint Pension Fund (Michigan Pension Fund), a multiemployer benefit plan, provides benefits for union members employed in the retail supermarket industry in Michigan. The appellants, as stated, are all subsidiaries of Nu-Trax, Inc. (formerly Chatham Supermarkets, Inc.).
 
 
 3
 Nu-Trax and its predecessor, Chatham Supermarkets, as well as some of the appellants, were parties to collective bargaining agreements with various Teamster locals and Nu-Trax was party to an agreement with the Food Commercial Workers Union Local 876. Pursuant to these respective agreements, Nu-Trax and some of the appellants were obligated to contribute funds on behalf of their employees to the Central States Pension Fund and the Michigan Pension Fund. The parties do not dispute that under ERISA, Nu-Trax and the appellants are under "common control" and thus are an employer control group for purposes of withdrawal liability.
 
 
 4
 The parties also do not dispute that on May 30, 1987, Nu-Trax and the appellants ceased their operations that employed the Teamsters. Withdrawal from the Central States Pension Fund occurred at this time. On September 9, 1987, creditors filed an Involuntary Petition under Chapter 11 of the Bankruptcy Code against Nu-Trax. The Bankruptcy court entered an Order of Relief against Nu-Trax under Chapter 11 on October 1, 1987, and a trustee in bankruptcy was appointed.[1] The parties also do not dispute that in early 1988, withdrawal from the Michigan Pension Fund occurred when all covered operations under the plan ceased. Each of the appellants now has ceased doing business. Both of the appellees sent appellants a notice and demand for interim withdrawal payments and requested arbitration, but no payments have been made.
 
 
 5
 Central States Pension Fund and its representative trustee, Howard McDougall, filed a complaint on October 3, 1988, to compel Nu-Trax's subsidiaries to make interim withdrawal liability payments. On January 13, 1989, the trustees of the Michigan Pension Fund moved to intervene. Like Central States, the Michigan Pension Fund trustees sought to compel the appellants to make interim withdrawal liability payments under ERISA. The district judge granted the Michigan Pension Fund trustees the right to intervene on February 14, 1989.
 
 
 6
 Central States and the Michigan Pension Fund trustees moved for summary judgment, respectively, on January 9, 1989, and March 13, 1989. The United States District Court for the Eastern District of Michigan, Honorable Horace Gilmore, granted the appellees summary judgment in a final order on March 23, 1989. In granting summary judgment, the district judge ordered the appellants to pay installments constituting interim payments, interest on those payments that are overdue and attorney fees. The appellants filed a timely notice of appeal on April 10, 1989.[2]
 
 
 7
 The Pension Benefit Guaranty Corporation (PBGC), a government corporation that administers and enforces Title IV of ERISA, has submitted a brief amicus curiae.
 
 II
 
 8
 Before addressing the appellants' argument, it is essential to explain briefly the pertinent statutory scheme of Title IV of ERISA. Under ERISA an employer withdrawing from a multiemployer pension plan is subject to withdrawal liability equal to its allocable share of the plan's unfunded vested benefits at the time of its withdrawal. 29 U.S.C. Sec. 1381. All businesses under common control are treated as a single employer and are jointly and severally liable for such payment in the event of withdrawal. Sec. 1301(b). Withdrawal occurs when an employer permanently ceases all covered operations under the plan. Sec. 1383(a).
 
 
 9
 After an employer withdraws from a plan under ERISA, the plan sponsor[3] must notify the employer of the amount of liability and demand payment for such amount. Secs. 1381, 1382, 1399(b)(1). Either party may subsequently request arbitration to resolve differences. Sec. 1401(a)(1). The arbitration under regulations issued by PBGC, is conducted and a record is made. 29 C.F.R. Sec. 2641.4(a)(2), (4).
 
 
 10
 The employer is required to make interim payments on withdrawal liability until the arbitrator has made a final decision. 29 U.S.C. Secs. 1399(b)(2), 1401(d). If the arbitrator subsequently determines, however, that the interim payments have resulted in an overpayment, the plan sponsor must refund the overpayment plus interest. Sec. 1401(d): 29 C.F.R. 2641.7(a)(2), 2644.2(d). Any party may bring an action in a United States district court to enforce, vacate or modify the arbitrator's award. 29 U.S.C. Sec. 1401(b)(2). Arbitration is not, however, a jurisdictional prerequisite for district court review. Mason and Dixon Tank Lines v. Central States, Southeast and Southwest Pension Funds, 852 F.2d 156, 163 (6th Cir.1988).
 
 III
 
 11
 The appellants argue that the district court erred in granting summary judgment for the appellees. The appellants contend that ERISA, specifically 29 U.S.C. Sec. 1301(b), does not necessarily require the imposition of joint and several liability upon the component members of an employer group where the employers consist of several businesses under common control. Section 1301(b) provides, however, in pertinent part:
 
 
 12
 For purposes of this subchapter, under regulations prescribed by the corporation, all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer.
 
 
 13
 Id. Despite the fact that courts consistently have construed this language to impose joint and several withdrawal liability upon employers under common control, the appellants argue that exceptions to the joint and several liability interpretation should be made for them.
 
 
 14
 The appellants note that Congress expressly imposed by statute joint and several liability on all members of an employer control group when it enacted the Single Employer Pension Plan Amendment Act of 1986 (SEPPA), 29 U.S.C. Sec. 1362-64. The appellants point out that Congress did not expressly impose joint liability, however, for multiemployer plans in enacting the MPPA but concede that courts have consistently imposed such liability in enforcing section 1301(b). Because Congress did not expressly impose joint and several liability on all members of the employer control group for withdrawal from the multiemployer plans, the appellants argue that this court is free to carve out an exception to the judge-made rule of joint and several liability for withdrawal from multiemployer plans.
 
 
 15
 The appellants argue that such an exception should be made for them because of the bankruptcy of their parent corporation, Nu-Trax. The appellants note that Nu-Trax is in Chapter 11 and that its assets eventually will be liquidated for the benefit of Nu-Trax's creditors under the orders of the bankruptcy court. The appellants further note that Nu-Trax owns all or substantially all of the appellants' stock as an asset. The appellants argue that the policy of ERISA will be best served by allowing the liquidation of the appellants with Nu-Trax and the distribution of the proceeds of the liquidation by the bankruptcy trustee to all creditors, including the appellees. The appellants submit that exempting the appellants' from interim payments until such liquidation would allow the appellants to be treated as the single entity contemplated in section 1301(b).
 
 
 16
 The appellees argue that if this court accepts the appellants' argument, the court will be reversing two well established principles of ERISA withdrawal liability. The appellees contend that the obligation to make immediate payments notwithstanding a dispute, and, further, the extension of this obligation jointly and severally to all members of the employer control group, are two principles that are established firmly. The appellees also argue that the bankruptcy of Nu-Trax in no way relieves the appellants of their joint and several withdrawal liability because, appellees point out, the single employer treatment in section 1301(b) is only for purposes of withdrawal liability under ERISA, not for liquidations and distributions governed by the Bankruptcy Code.
 
 IV
 
 17
 We agree with the appellees and hold that the appellants are not exempt from making interim payments to the two multiemployer pension plans. In so holding, we note that we review the district court's conclusions of law de novo. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). The district judge correctly determined that when an employer withdraws from a multiemployer pension plan, that employer is compelled to make interim withdrawal liability payments in accordance with the statute. 29 U.S.C. Sec. 1399(c)(2); Marvin Hayes Lines v. Central States, Southeast and Southwest Areas Pension Fund, 814 F.2d 297, 299 (6th Cir.1987); Central States, Southeast and Southwest Areas Pension Fund v. 888 Corp., 813 F.2d 760, 762 n. 2 (6th Cir.1987). Regardless of the pendency of any dispute, interim payments of withdrawal liability must be made to the plan. Marvin Hayes Lines, 814 F.2d at 299. The parties do not dispute that withdrawal from the two plans has occurred. Accordingly, the defendants are obliged under the statute to make interim payments.
 
 
 18
 Moreover, members of the common control group are held jointly and severally liable for withdrawal payments. PBGC v. Ouimet Corp., 630 F.2d 4, 11 (1st Cir.1980), cert. denied, 450 U.S. 914, 101 S.Ct. 1356, 67 L.Ed.2d 339 (1981). The MPPAA retained the common control (or "controlled group") provision of ERISA prescribing that for purposes of the subchapter, "all employees ... of businesses ... which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." Sec. 1301(b)(1) (emphasis added); Mason and Dixon Tank Lines, 852 F.2d at 159. While this language is unambiguous, we also point out that the House and Senate Reports indicate that the primary purpose of this common control provision is to ensure that employers will not circumvent their ERISA and MPPAA obligations by operating through separate entities. 852 F.2d at 159 (citing S.Rep. No. 383, 93d Cong., 2d Sess. 43, reprinted in 1974 U.S.Code Cong. & Admin.News 4639, 4890, 4928; H.R.Rep. No. 807, 93d Cong., 2d Sess. 50, reprinted in 1974 U.S.Code Cong. & Admin.News 4670, 4716). The parties do not dispute that the appellants are members of a control group as contemplated in section 1301(b)(1). Consequently, we hold that the appellants are liable for the interim payments to the plans.
 
 
 19
 The appellants offer no reason to carve out an exception to this well established rule other than the bankruptcy of the appellants' parent company. Congress specifically addressed, however, an employer's insolvency and liquidation in enacting ERISA. See 29 U.S.C. Sec. 1405(b). The employer's amount of liability may be reduced because of insolvency for purposes of withdrawal payments. Id. A bankrupt employer is not exempt, however, from interim payments while awaiting liquidation of its assets. See I.A.M. Nat'l Pension Fund v. Slyman Ind., 901 F.2d 127, 129 (D.C.Cir.1990). Any effect of the Nu-Trax bankruptcy, therefore, is a question reserved for resolution by arbitration. Consequently, the appellants' claim that Nu-Trax's bankruptcy creates an exception from their statutory duty to make interim withdrawal liability payments has no merit. Because the district judge correctly recognized and followed these principles of law in granting summary judgment for the plaintiffs, we AFFIRM the district court.
 
 
 
 [1]
 Appellants are not parties to the bankruptcy proceeding and no motion to substantively consolidate the appellants with Nu-Trax is currently pending in that proceeding
 
 
 [2]
 Regal Insurance, Inc., one subsidiary of Nu-Trax originally named as a defendant in this action, has settled with the appellees
 
 
 [3]
 The "plan sponsor" is defined by ERISA with respect to multiemployer plans as the plan's joint board of trustees, or the plan administrator if the plan has no joint board of trustees. 29 U.S.C. Sec. 1301(a)(10)